

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAWBOE PROPERTIES, L.L.C., et al                CIVIL ACTION

VERSUS                                                                           NO. 00-196

WESTCHESTER FIRE
INSURANCE COMPANY                                   SECTION "T"(2)

This cause came for hearing on a previous date upon the Motion of Plaintiffs, Rawboe Properties, L.L.C., et al ("Plaintiffs"), and upon the Motion of the Defendant, Westchester Fire Insurance Company ("Westchester"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have waived oral argument, and the Court, having studied the legal memoranda and exhibits submitted by the parties, the record, and applicable law, is fully advised in the premises and ready to rule.

## ORDER AND REASONS

### I. BACKGROUND

This case arose as an action for recovery of damages under an insurance policy filed by the Plaintiffs in the Civil District Court for the Parish of Orleans, State of Louisiana, on or about December 29, 1999. Westchester timely removed the case to this Court properly claiming original



jurisdiction pursuant to 28 U.S.C. § 1332. (Notice of Removal, Doc. 1). Both parties have stipulated to the relevant facts and request this Court grant Summary Judgment. (Westchester's Memorandum in Support of Motion for Summary Judgment, Doc. 9; Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Doc. 25).

Westchester issued a fire insurance policy ("the policy") number IMA 429635 to Plaintiffs, which was effective from October 6, 1997 through October 6, 1998 and insured the property located at 516 Gravier Street ("subject property"). (Westchester's Memorandum, Uncontested facts ¶ 2 ). The named insureds on the policy were Boes Iron Works, Inc., Rawboe Properties, L.L.C., and Roger T. Boes. Id.

On October 19, 1997, the subject property sustained damage as a result of a fire, which originated in an adjacent building located at 309 Magazine Street. Id. at ¶ 9. The Plaintiffs notified Westchester of the loss sustained to the subject property on or about October 22, 1997. Id. In response, Westchester sent Leonard Quick and William Mounton to inspect the subject property and appraise the damage. Id. The whole loss and damage was estimated at a sum of $26,710.60, which was disputed by Plaintiffs. (Westchester's Reply Memorandum, Doc. 31, Exh. 9, pg. 50). A second estimate was obtained upon the request of the Plaintiffs. Id. The second estimate was performed by an independent contractor, Mr. Wimprine, who stated that Mr. Mounton's original estimate contained appropriate figures for the damages sustained to the subject property. Id. at pg. 54. Upon completion of the second estimate, the Plaintiffs did not make any further objections as to the estimate of damages. Id. at pg. 55. Subsequently, the Plaintiffs signed a Sworn Statement in Proof of Loss executed before a notary public, which contained the whole loss and damage estimate of $26,710.60. (Westchester's Memorandum, Exh. B).

The actual amount claimed under the policy was the whole loss and damages less a $5,000.00 deductible for a total claim of $21,710.60. Id. Consequently, Mr. Mounton issued to the Plaintiffs a subrogation receipt for $21,710.60. (Westchester's Memorandum, Exh. C). The subrogation receipt stipulated that the $21,710.60 payment was received in return for full settlement of all claims and demands for loss and damage occurring by fire on October 19, 1997 to the subject property. Id. In reliance on the terms of the subrogation receipt, Westchester issued a check for the amount of $21,710.60 as payment for the insurance claim. (Westchester's Memorandum, Uncontested facts ¶ 9).

Although the Plaintiffs signed a Subrogation receipt conditioned on full and final settlement, the terms of the policy permitted the Plaintiffs to institute a supplemental claim within two years from the date of loss. (Westchester Memorandum, Exh. A, pg. 2). The policy specified that "no one may bring a legal action against us under this Coverage Part unless . . . 2. The action is brought within 2 years after you first have knowledge of the loss." Id. Subsequently, the Plaintiffs obtained an independent appraisal from Construction South, Inc. (Plaintiffs' Memorandum, Exhs. M, P). Construction South Inc. estimated the damages to the subject property to be $116,140.00, exclusive of obtaining architects and engineers to draft plans. (Plaintiffs' Memorandum, Exh. P). The Plaintiffs then obtained new legal counsel, Marc Dorsey. Mr. Dorsey was asked to submit a legal demand on behalf of the Plaintiffs to Westchester for the original claim of $21,710.60 and for the supplemental claim of $116,140.00.[1] (Plaintiffs' Memorandum, Uncontested facts ¶ 10). Mr. Dorsey complied with the Plaintiffs' request and submitted the demand on February 24, 1999 and again on

---

[1] The Plaintiffs made a claim for the original amount as well as a supplemental amount because they had not yet received the monies from the original claim. The check from the original claim was deposited in an interest bearing account as part of a settlement in the Plaintiff's, Roger Boes, divorce proceedings. The proceeds were to be distributed pursuant to terms of the settlement. (Westchester's Memorandum, pg. 3).

September 13, 1999. (Plaintiffs' Memorandum, Uncontested facts ¶ 11). Westchester responded to the demand and maintained the position that the claim was settled upon the Plaintiffs signing the Subrogation receipt and Westchester's payment of the claim. (Plaintiffs' Memorandum, Uncontested facts ¶ 18). Thereupon, the Plaintiffs filed their petition for supplemental recovery on December 29, 1999, nearly two months beyond the two year prescriptive period set forth in the policy. (Westchester's Memorandum, Exh. A)

The Plaintiffs contend that Westchester acted in bad faith in violation of R.S. 22:658 and R.S. 22:1220 by making a payment conditioned on full and final settlement of the claim. They also claim that the wording of the policy was ambiguous and caused confusion as to what actions would be sufficient to interrupt the two year prescriptive period for making a supplemental claim. Westchester asserts that it was under no obligation to make an unconditional tender and thus, did not act in bad faith by making a tender conditioned on full and final settlement. Additionally, Westchester contends that the Plaintiffs' right to make a supplemental claim properly prescribed because they failed to bring a supplemental claim within the two year prescriptive period.[2]

## II. LEGAL ANALYSIS

### A. *MOTION FOR SUMMARY JUDGMENT*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[2] It should be noted that Westchester also filed a motion for Rule 11 sanctions against the Plaintiffs. However, any reference to this Motion is unwarranted in this case because the Motion was not filed with this Court.

is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Stults v. Conoco, Inc., 76 F.3d 651, 655-56 (5th Cir. 1996) (citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912-13 (5th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis added); Tubacex, Inc. v. M/V RISAN, 45 F.3d 951, 954 (5th Cir. 1995). Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In this case, both the Plaintiffs and Westchester have offered the statements of uncontested facts, and both parties have moved for summary judgment. (Westchester's Memorandum in Support of Motion for Summary Judgment, Doc. 9; Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Doc. 25). Therefore, no material issue of fact exists, there is nothing for the trier of fact to determine, and summary judgment must be **GRANTED.**

    B.    *PLAINTIFFS' CLAIM OF BAD FAITH UNDER REVISED STATUTES 22:658 AND 22:1220.*

The Plaintiffs claim that Westchester committed bad faith under Louisiana Revised Statutes 22:658 and 22:1220 by failing to unconditionally tender payment of the insurance claim. The Plaintiffs' claim is without merit for the following reasons:

La.R.S. 22:658 states, in pertinent part:

> A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. . .
>
> (4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim.
>
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss. . .

LA Rev. Stat. Ann. § 22:658 (West 2000).

Similarly, La.R.S. 22:1220 states in pertinent part:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's

6

>   duties imposed in subsection A:
>   (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
>   (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
>   (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of the insured.
>   (4) Misleading a claimant as to the applicable prescriptive period.
>   (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
>
>   C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained, or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

LA Rev. Stat. Ann. § 22:1220 (West 2000).

The United States Fifth Circuit stated that the similarity between sections 22:658 and 22:1220 is that "each statute provides for penalty awards when an insurer has arbitrarily, capriciously, or without probable cause failed to timely settle a claim." <u>Matter of Hanover Corp. of Am. v. State Farm Mut. Auto. Ins. Co.</u>, 67 F.3d 70, 75 (5th Cir. 1995). Furthermore, "the primary difference between the two statutes is that section 22:1220 provides for an insured or claimant or both to sue for breach of the duties under the statute, whereas section 22:658 only allows an insured to sue for breach." <u>Id.</u> (citations omitted). Since the case at hand involves an action between an insured and insurer, both statutes are applicable.

Louisiana jurisprudence has interpreted R.S. 22:658 and R.S. 22:1220 to establish that where there is a reasonable disagreement between the insured and insurer, failure of the insurer to pay the

undisputed portion of the claim within the statutory delay will subject the insurer to liability for penalties on the entire claim; to avoid the imposition of such penalties, the insurer must unconditionally tender to the insured the portion of the claim which is undisputed. *See,* Sibley v. Insured Lloyds, 442 So. 2d 627, 632 (La. App 1 Cir. 1983) (citations omitted). The Plaintiffs allege that Westchester was in bad faith because they failed to make such an unconditional tender of the undisputed portion of the claim. However, the cases cited by the Plaintiffs in support of their allegations are distinguishable from the present case. In every case cited by the Plaintiffs the facts indicate an expressed disagreement between the insured and the insurer, whereas in the present case, the facts indicate that there was not an express disagreement between the insured and the insurer.

As such, although there was an initial disagreement between Westchester and the Plaintiffs as to the amount of the claim, Westchester was not required to make an unconditional tender because the disagreement was resolved. The disagreement was resolved when Westchester, upon request of the Plaintiffs, acquired a second independent adjuster to appraise the damage to the subject property. The independent adjuster's appraisal matched the appraisal of Westchester's adjuster. Thereafter, the Plaintiffs did not object to either appraisal and voluntarily signed a subrogation receipt, which reflected the amount contained in each appraisal. Therefore, since there was not a reasonable disagreement over the estimate of damages sustained to the subject property, Westchester was not required to make an unconditional tender. Hence, Westchester's conditional tender for full and final settlement was a proper payment of the Plaintiffs' claim. Thus, this Court believes that Westchester paid the entire claim in good faith, and that the Plaintiffs' bad faith claim is without merit. Therefore, the Plaintiffs' claim for damages alleging Westchester's bad faith under R.S. 22:658 and R.S. 22:1220 is hereby **DENIED**.

C.  *PLAINTIFFS' CLAIM OF AMBIGUITY UNDER R.S. §22:691*

Regardless of the Plaintiffs signing the subrogation receipt conditioned on full and final settlement, the terms of the insurance policy specified that the Plaintiffs were permitted to make a supplemental claim for damages within two years from the date of loss.[3] However, the Plaintiffs claim that the language of the policy was ambiguous because it used the term "legal action" instead of "suit," as required under R.S. §22:691. *See,* La. Rev. Stat. §22:691 (West 2000). Thus, the Plaintiffs assert that their attorney's demand letters submitted to Westchester within the two year prescriptive period constitutes legal action and is sufficient to interrupt prescription.

Revised Statute §22:691 provides the standard form for a fire insurance policy in the state of Louisiana. *See,* id. The standard form includes the following language:

> Suit-No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss.

*See,* id. Plaintiffs are asking this Court to hold that since Westchester used the term action instead of suit, that the insurance policy is ambiguous.

"The terms 'action' and 'suit' are nearly if not quite synonymous." Blacks's Law Dictionary 28-29 (7th ed. 1999). Action is defined in pertinent part as an "ordinary proceeding in a court of justice . . . More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." Id. Clearly, the use of the term action instead of suit in a contract does not create ambiguity because the two words are synonymous.

---

[3] The policy's two year prescriptive period for bringing a supplemental claim was greater than the required one year term specified in R.S. 22:691. R.S. 22:691.2 (a) provides that the insurer may include terms in the contract that are equivalent to or exceed the provisions of the standard fire policy. La Rev. Stat. 22:691.2.

9

Furthermore, the Louisiana Supreme Court has required that Courts interpret insurance policies under the general rules of contract as set forth in the Louisiana Civil Code. *See*, Peterson v. Schimek, 98-1712 (La. 3/2/99), 729 So. 2d. 1024, 1028, (citations omitted). As such, the judiciary should look to the intent of the insured and insurer as reflected by the words of the policy. *See*, id., (*citing* La. Civ. Code art. 2045). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." Id., *(citing* La. Civ. Code art. 2046). Thus, the words contained in an insurance contract are to be equated with their general prevailing and ordinary meaning, provided the words have not acquired a technical meaning. *See*, id., (*citing* La. Civ. Code art. 2047). In essence, "[w]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." Id., (citations omitted).

In the present case, the term legal action taken in its general and prevailing meaning is equivalent with the term suit or filing of a suit. Hence, the intent of Westchester, as reflected by the words of the insurance policy, was to allow the Plaintiffs to make a supplemental claim within the two year prescriptive period only by means of filing suit in the appropriate court. Consequently, the only efforts made by the Plaintiffs during the prescriptive period was to send Westchester two demand letters reflecting the amount of their "supplemental claim." This Court cannot reach the conclusion that the mere delivery of a demand letter to opposing counsel constitutes "legal action" and is sufficient to interrupt a prescriptive period. Thus, since the Plaintiffs failed to file suit within the two year prescriptive period, their right to make a supplemental claim accurately prescribed. Therefore, the Plaintiffs claim for ambiguity of contract must be **DENIED**.

## III. CONCLUSION

This Court is of the opinion that there was not a reasonable disagreement between Westchester and the Plaintiffs as to the estimate of damages sustained to the subject property. Thus, Westchester was not required to make an unconditional tender of the claim. Furthermore, this Court believes that the wording of the contract was not ambiguous and did not create confusion as to what actions were required to interrupt the two year prescriptive period set forth in the insurance policy.

Accordingly,

**IT IS ORDERED** that the Plaintiffs' Motion for Summary Judgement be, and the same hereby is **DENIED**, and that Westchester's Motion for Summary Judgment be, and the same hereby is **GRANTED**.

New Orleans, Louisiana, this _18th_ day of December, 2000.

G. Thomas Porteous, Jr.
United States District Judge